(58 App. Div. 36.)

### HENTZ v. HAVEMEYER et al.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

LIMITATION OF ACTIONS.

Plaintiff was employed to effectuate a consolidation of rival business interests under a trust agreement, for which he was to receive a certain compensation when the combination should be formed. *Held*, that limitations commenced to run against his claim for services when the proposed combination was finally consummated.

Appeal from trial term, New York county.

Action by Henry Hentz against Theodore A. Havemeyer and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

See 44 N. Y. Supp. 58.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Horace E. Deming, for appellant.

John E. Parsons, for respondents.

INGRAHAM, J. The plaintiff's cause of action, as alleged in the complaint, is to recover for services rendered to the defendants, composing the firm of Havemeyer & Elder, under an employment wherein the plaintiff "promised and agreed to devote his best skill and ability for the purpose of bringing about a cessation of the warfare then existing between the said businesses, and a merger thereof into one common business, in which each of the said several businesses should be allotted a certain share or proportion, and that in consideration of, and as a reasonable compensation for, the work, labor, and services and skill exercised by the plaintiff in that behalf, he was to receive, when such merger was brought about, a sum equal to one per centum of the share or proportion therein allotted to the said businesses in which defendants were interested." The plaintiff alleges that he devoted his best skill, ability, and knowledge, and spent much time and labor, in and about the performance of said agreement, and that the defendants accepted the services of the plaintiff, and made constant use of his skill and ability in bringing together the persons aforesaid, in making them favorable to a cessation of business warfare, and in arranging for uniting the various businesses aforesaid into one common business; that in or about the month of August, 1887, the defendants, composing the firm of Havemeyer & Elder, and certain other sugar refiners engaged in the same business, entered into an agreement for the purpose of forming a certain board, to be designated under the name of the Sugar Refineries' Company, a copy of which agreement is annexed to the complaint; that under such agreement the parties executing the same formed a combination called the Sugar Refineries' Company, which business was continued under such agreement until about the year 1891 or 1892, and that the defendants received certificates of their interests in said business carried on under the said agreement of the par value $14,322,500; that the said agreement did not effect a legal merger and consolidation of the said businesses, but that the said businesses were conducted as a common business in the common interest, although there was no legal merger and consolidation, and that it was adjudged in a certain action brought by the people of the state of New York against the Sugar-Refining Company, one of the parties signing the agreement, that the said agreement was illegal and criminal, which decision was finally affirmed by the court of appeals about June, 1890 (24 N. E. 834); that about the year 1891 or 1892 the defendants, with other large and well-known sugar refiners, who were parties to the said agreement of

1887, procured the incorporation in the state of New Jersey of the corporation known as the American Sugar-Refining Company, which corporation exchanged its shares of capital stock for the certificates under the agreement of 1887, and that the value of the said stock and the money so allotted to or paid for the trust certificates theretofore issued to the defendants was more than $15,000,000, and upon such legal merger as aforesaid "all the conditions of said agreement with and employment of the plaintiff were fulfilled and performed on his part, and he became entitled to receive from the defendants, as the reasonable value of his said services under said agreement with said defendants, a sum equal to one per centum of the amount so allotted or paid as the share or proportion in said merger of the businesses in which defendants were interested." And the complaint demands judgment for the sum of $225,000. The agreement of 1887, which is annexed to the complaint, was what is known as the "Sugar-Trust Agreement," and it was under this agreement that the plaintiff alleges there was in fact a merger of the various individuals and corporations executing that agreement, under which merger these defendants and the other parties executing the agreement actually transacted business down to and including the year 1891. The defendants, denying the employment as alleged in the complaint, set up as a defense the statute of limitations. Upon the trial the complaint was dismissed.

The plaintiff testified to various conversations with Henry O. Havemeyer, one of the defendants, to prove the contract sued on. He testified that he first suggested to Havemeyer the scheme to unite the sugar refineries under an agreement similar to that under which the Standard Oil Trust and the Cotton-Seed Oil Trust were operated. At the first interview the plaintiff told Havemeyer that he (plaintiff) "was acquainted with the plan of the Standard Oil Company and the Cotton-Seed Oil Company; that I had information from my friend Mr. Macauley, the treasurer of the Cotton-Oil Trust; and that he had informed me of the principle of the trust. And I told Mr. Havemeyer then and there that it was a splendid thing for the sugar refiners to unite upon; that they were doing so badly, and they ought to make money,—they were entitled to make money; and that, the first opportunity I had, I would bring it in and show it to Mr. Havemeyer. I told him that the Standard Oil Company had very few companies when it started, and also the Cotton-Oil Trust, and they were getting along splendidly and making money, and that, as I stated before, the sugar refineries ought to combine, and, if he had no objection, I would see the other refiners and ask them to join an organization. I told him very distinctly that my charge for my services, if a combination was effected, would be one per cent. of his allotment,—of his share in the general business of the refiners." Subsequently the plaintiff produced the agreement under which the Cotton-Seed Oil Trust was operated, and his services were all directed towards making a combination upon substantially that plan. The plaintiff then endeavored to induce Harrison, Frazier & Co., sugar refiners doing business in Philadelphia, to join with the New York refiners; and in a letter to Messrs. Harrison, Frazier & Co. the

plaintiff proposed that an interview should be had in regard to the combination, and that at such interview Macauley should be present, "as he can answer some of your questions about the organization of the trust, as he had experience in the A. C. O. Trust," and in this letter attention was also called to the Standard Oil Trust. Subsequently the plaintiff submitted a plan to Mr. Havemeyer which contemplated a trust agreement under which all the refineries should transact their business. That plan contemplated that all of the co-partnerships were to be made corporations, such corporations to transfer all or at least a majority of their stock to seven or more trustees, who would act under the trust deed, and would issue trust certificates for the face value of the stock delivered to them; and there were other provisions which contemplated the organization or combination under a trust agreement, the general form of which seems to have become familiar from the success of the Standard Oil Trust and the Cotton-Seed Trust. There was no suggestion by the plaintiff as to the formation of any other combination; and the labor that he was to perform was in bringing about a combination in accordance with the general plan outlined by him, which was based upon such a trust agreement as was subsequently formed between the defendants and others engaged in the business of sugar refining in August, 1887. From the plaintiff's evidence it appears that it was a combination of this character that he recommended to the defendant, and that it did not occur to either the plaintiff or the defendants that such an agreement was illegal, or that there would be any legal difficulty in carrying it out. The plan that the plaintiff proposed, and that he labored to consummate, was a union or combination of those engaged in refining sugar, under some contract or agreement by which the business should be conducted. It does not appear that any suggestion was ever made by the plaintiff that a corporation should be established which would purchase from all these refiners their property, with which this corporation should conduct a business of sugar refining; and it was for the services rendered by the plaintiff in bringing about this union under such a trust agreement for which he was, if at all, entitled to compensation. Now, in August, 1887, such an agreement between the defendant and various other sugar refiners was made. That agreement contained a provision that the parties thereto who were not corporations should become incorporated before the instrument should take effect, and that all the shares of the capital stock of all such corporations should be transferred to the trustees nominated by the agreement, who were to control all the business conducted by all of the parties who executed it; and it was under this agreement, when executed and carried into effect, that the combination that the plaintiff had suggested was formed, and which he was employed to consummate. Whatever right this plaintiff had to compensation for his services accrued to him at the time that the combination was consummated, and it was then, if at all, that the defendants became indebted to the plaintiff for the compensation that it was agreed he should receive in case his services were successful in bringing about the combination which he was employed to effectuate. This agreement thus en-

tered into was subsequently declared, by a judgment of the supreme court, to be void and in violation of the law of this state; but it was just this combination, and no other, that was suggested, and thus only for his services in bringing about this combination he could recover. It is not necessary to determine in this action whether or not the fact that such an agreement was illegal and void as to the corporation entering into it is a bar to his recovery, as the defendants have pleaded the statute of limitations, and it is quite clear that whatever liability there existed under the plaintiff's employment was barred by the statute six years after the cause of action accrued by the combination under the trust agreement. The subsequent organization of the American Sugar-Refining Company, to whom was transferred all the properties held by the individuals or corporations who executed this trust agreement, was no part of the plan which plaintiff was employed to effectuate, and he had no part in the formation or organization of that corporation. It was the creation of this combination of the various sugar refineries under an agreement such as that executed in 1887 that the plaintiff, according to his testimony, was employed to bring about; and it was for the services that he rendered in furtherance of that object for which he was entitled to recover, if he was entitled to recover at all. His right to compensation, if any, accrued under his contract with the defendants, as testified to by him, when that combination was finally consummated; and this is the test that is applied in determining whether a cause of action has accrued, so that the statute of limitations would commence to run. Adams v. Bank, 36 N. Y. 260; Peck v. Steamship Co., 5 Bosw. 234.

As the plaintiff's claim was barred by the statute of limitations, the courts correctly dismissed the complaint, and for that reason we think the judgment was right and should be affirmed, with costs. All concur.